# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.** and **COLUMBIA SPORTSWEAR COMPANY**,<br><br>    Plaintiffs,<br><br>v.<br><br>**VENTEX CO., LTD. and DAN MEYER**,<br><br>    Defendants. | Case No. 3:17-cv-623-SI<br><br>**OPINION AND ORDER** |

David W. Axelrod and Nicholas F. Aldrich, Jr., SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Plaintiffs.

James E. Geringer, KLARQUIST SPARKMAN LLP, 121 SW Salmon Street, Suite 1600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Columbia Sportswear North America, Inc. ("CSNA") and Columbia Sportswear Company ("CSC") (collectively, "Columbia") filed this lawsuit against Defendants Ventex Co., Ltd. ("Ventex") and Dan Meyer ("Meyer"). Columbia recently dismissed all claims against Meyer. Against Ventex, Columbia alleges infringement of three patents, in violation of 35 U.S.C. § 101, *et seq.*; unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125; unfair competition in violation of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et*

*seq.*; and breach of contract. Ventex has moved to dismiss all claims, arguing that the Court lacks personal jurisdiction over Ventex. For the reasons that follow, Ventex's motion is denied.[1]

## STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of its complaint, uncontroverted allegations must be taken as true. *Id*. In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.* (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

"Federal Circuit law governs the issue of personal jurisdiction in . . . patent-related cases." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). The general standards governing personal jurisdiction in the Ninth and Federal Circuits, however, are virtually identical. *See, e.g.*, *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377-78 (Fed. Cir. 2015); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348-49 (Fed. Cir. 2003); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200-01 (Fed. Cir. 2003).

---

[1] The Court has reviewed all written materials filed in connection with this motion and concludes that oral argument would be unlikely to be helpful.

## BACKGROUND

CSC is the parent company of CSNA. Both corporations are organized under the laws of the State of Oregon, and both have their principal places of business in Portland, Oregon. CSNA owns the patents at issue. Ventex is a foreign company based in Seoul, South Korea. Ventex manufactures textiles for use in clothing, including outdoor wear. Meyer is an Oregon resident and, through his company Peak Performance Textiles, LLC, was the sole sales representative for Ventex in the United States. In 2010, CSC and Ventex entered into a Material Component Supply Agreement ("Agreement") (ECF 38). CSNA is an intended beneficiary of that Agreement. Columbia alleges that under the Agreement, Ventex earned millions of dollars in revenue by producing textiles for use in Columbia products.

The Agreement includes terms and conditions intended to protect CSC's intellectual property rights, including trademarks, patents, and copyrights. Agreement, §§ 1, 4. The Agreement even defines "Trademarks" to include, in addition to marks, "any other intellectual property associated with Materials or Finished Goods, including but not limited to all . . . patents . . . owned or licensed by Columbia or its affiliates." *Id.* at 3, § 1.16. Under the Agreement, Ventex must "only use the Trademarks on or in connection with the Materials and only in a manner expressly set forth in writing by Columbia." *Id.* at 4, § 4.1. The Agreement further provides that Ventex "will not at any time directly contest . . . the validity of any of the Trademarks." *Id.* The Agreement further requires Ventex to maintain the confidentiality of Ventex's relationship with CSC. *Id.* at 5, § 5.3. The Agreement also provides that it will be "exclusively governed in all respects by and interpreted in accordance with the laws of the State of Oregon," that any dispute between the parties "will be settled by binding arbitration pursuant to the commercial rules of the American Arbitration Association," that any arbitration proceeding must take place in Portland, Oregon, and

that no provision will "prevent either party from seeking interim or permanent injunctive relief against the other in any court of competent jurisdiction." *Id.* at 13-14, § 16.6.

As alleged in the First Amended Complaint ("FAC"), in 2010 (the year the parties entered into the Agreement), Columbia launched its "Omni-Heat® Reflective" line of products, which "used reflective elements positioned on the fabric in a discontinuous array . . . so as to allow . . . moisture permeability of the base fabric while also providing the advantages of heat reflectivity." FAC (ECF 26) at ¶ 20. CSNA filed patent applications for related lines of products, including the D657,093 ("D'093") Design Patent, entitled "HEAT REFLECTIVE MATERIAL." The U.S. Patent and Trademark Office ("PTO") issued the D'093 Design Patent to CSNA in April 2012. That patent features reflective material positioned on the base fabric in evenly stacked, wavy lines.

According to Columbia, in 2012 Ventex sought to become a manufacturer of Columbia's Omni-Heat® fabric, which practiced the D'093 Design Patent. Columbia declined Ventex's request. Columbia alleges that after Columbia denied Ventex's request, Ventex began to collaborate with Seirus Innovative Accessories, Inc. ("Seirus"), a California company, to develop a fabric known as HEATWAVE ("Heatwave"). According to Columbia, Heatwave infringed on— and was designed to compete with—fabrics using the D'093 Design Patent. Columbia also asserts that Meyer, Ventex's sole sales representative in the United States, facilitated Ventex and Seirus's infringing activities. Columbia contends that after a meeting between Meyer and Seirus in 2012 at a trade show in Utah, Ventex agreed to make the Heatwave fabric for Seirus. Meyer also participated in later communications between Ventex and Seirus, including providing Seirus with a price quote for the Heatwave fabric. According to Columbia, Meyer also represented Ventex at trade shows, promoting materials using the allegedly infringing Heatwave fabric.

After these initial communications between Ventex, Seirus, and Meyer, Ventex manufactured the Heatwave fabric for Seirus, which Seirus then incorporated into its glove liners, hats, and socks. According to Columbia, by March 2013, Seirus had ordered 3,000 yards of Heatwave fabric from Ventex, and Seirus and Ventex had entered into a vendor agreement for that material. Columbia further alleges that Ventex knew that the Heatwave fabric might infringe on Columbia's D'093 Design Patent, informed Seirus about the D'093 patent, and sought legal advice about the risks of infringing a design patent. Columbia also alleges that after Columbia and Ventex signed their Agreement in 2010, Ventex used on its website both the name "Columbia Sportswear" and Columbia's trademark falsely to designate Columbia as one of Ventex's customers.

In 2013, CSNA sued Seirus in federal court in the Western District of Washington, alleging infringement of the D'093 Design Patent. Shortly thereafter, CSNA amended its complaint against Seirus to add two additional patents, U.S. Patent Nos. 8,424,119 ("'119 Patent") and 8,453,270 ("'270 Patent"). (The D'093 Design Patent, the '119 Patent, and the '270 Patent comprise the three patents at issue in the pending lawsuit against Ventex.) In January 2015, CSNA refiled its patent infringement lawsuit against Seirus in federal court in the District of Oregon, where it was assigned to United States District Judge Marco Hernandez. In March 2016, Seirus and CSNA filed a Joint Motion for Entry of Judgment Re U.S. Patent D657,093, and the Court issued a judgment of validity. *Columbia Sportswear N. Am., Inc., v. Seirus Innovative Accessories, Inc.*, Case No. 3:15-cv-64-HZ (D. Or.). CSNA also moved for partial summary judgment, asserting that Seirus infringed on the D'093 Design Patent. In August 2016, Judge Hernandez granted that motion against Seirus.

In January 2017, Ventex filed petitions for *inter partes* review ("IPR") of the two additional Columbia patents. The PTO's Patent Trial and Appeal Board ("PTAB") later dismissed

the petitions and terminated the IPR proceedings for the '119 and '270 Patents. In its orders, the PTAB found that Seirus was in privity with Ventex and that Seirus was the real party in interest in the two IPRs.

In September 2017, Judge Hernandez granted Seirus' motion to transfer venue in Columbia's patent infringement case against Seirus to the Southern District of California but continued to preside over the case. Later that month, a jury found Seirus liable for infringement of the D'093 Design Patent based on its sales of Heatwave products. Judge Hernandez entered judgment awarding CSNA more than $3 million against Seirus. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, Case No. 3:17-cv-1781-HZ (S.D. Cal) (ECF 403). That case is currently on appeal to the Federal Circuit.

## DISCUSSION

In the case pending before this Court, Ventex moves under Rule 12(b)(2) to dismiss Columbia's FAC for lack of personal jurisdiction. Columbia does not argue that there is general jurisdiction over Ventex. Rather, Columbia asserts only specific jurisdiction. Ventex argues that there is no basis for specific jurisdiction. As discussed below, the Court finds that it has specific personal jurisdiction over Ventex based on Columbia's claims of patent infringement and breach of contract. The Court also finds that it has pendant personal jurisdiction based on Columbia's claims of unfair competition.

**A. Personal Jurisdiction Generally**

The law of the Federal Circuit governs personal jurisdiction concerning patent-related claims. *Deprenyl Animal Health*, 297 F.3d at 1348. Under Ninth Circuit law, for all non-patent claims when no applicable federal statute otherwise governs personal jurisdiction, the district court applies the law of the forum state. *Schwarzenegger*, 374 F.3d at 800 (9th Cir. 2004) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute

is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L)). Thus, for the non-patent claims, the Court need only determine whether its exercise of personal jurisdiction over a defendant would offend constitutional due process requirements. *See Schwarzenegger*, 374 F.3d at 800-01 (holding that when a state long-arm statute is coextensive with federal due process requirements, "the jurisdictional analysis under state law and federal due process are the same").[2]

Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id.* at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) (rejecting "mechanical tests" and "conceptualistic . . . theories of the place of contracting or of performance" to determine personal jurisdiction (citations omitted)). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

A forum state may exercise two forms of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-20 (2011). A court may exercise general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic," even if those contacts

---

[2] The jurisdictional due process analysis concerning a state's long-arm statute is the same in the Ninth Circuit as it is in the Federal Circuit, even though the Fifth Amendment's due process clause governs the Federal Circuit's analysis and the Fourteenth Amendment's due process clause governs a state's long-arm statute. *See, e.g.*, *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

are unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may nevertheless have specific personal jurisdiction if: (1) the defendant has certain minimum contacts with the forum state; (2) the controversy arose out of those contacts; and (3) a court's exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-74. After a court asserts general personal jurisdiction over a defendant, the court may hear any claim against that defendant. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017). A plaintiff relying on specific personal jurisdiction, however, must establish that jurisdiction is proper for "each claim asserted against a defendant." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (2004)).

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012); *Brayton Purcell*, 606 F.3d at 1128. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful

direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

In the Federal Circuit, specific personal jurisdiction entails a nearly identical three-part test: "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012). In the Federal Circuit, the first element does not incorporate the "purposeful avail[ment]" language of its Ninth Circuit analogue, because the purposeful availment test is, as stated, generally applied to contract actions. The Federal Circuit, however, has held that purposeful availment still can satisfy the first prong of its analysis. *See, e.g.*, *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006) (holding that a defendant had satisfied the first prong of the three-prong test in the Federal Circuit by "purposefully avail[ing] itself" of the forum state).

For the second prong of the analysis, the Federal Circuit and Ninth Circuit tests are identical. *Compare Brayton Purcell*, 606 F.3d at 1128 (Ninth Circuit holding that "the claim must be one which arises out of or relates to the defendant's forum-related activities") *with Breckenridge Pharm.*, 444 F.3d 1356 at 1363 (Federal Circuit holding that the court must determine whether the suit "arises out of or relates" to the defendant's forum contacts). Under both Ninth and Federal Circuit law, the plaintiff bears the burden as to the first two prongs, but if the plaintiff satisfies both, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802); *accord Breckenridge Pharm.*, 444 F.3d at 1361-62 (holding that after a plaintiff has satisfied the first two prongs of the analysis, the defendant must "present a

compelling case that the presence of some other considerations would render jurisdiction unreasonable." (quoting *Burger King*, 471 U.S. at 472)).

**B. Columbia's Claim of Breach of Contract**

Columbia asserts that Ventex breached the Agreement by displaying without authorization Columbia Sportswear's trademark on Ventex's website, disclosing without authorization the parties' relationship, and contesting Columbia's patents. In addition to money damages, Columbia seeks injunctive relief enjoining Ventex's alleged breach of the Agreement.[3]

When cases involve contractual obligations, the Supreme Court has emphasized "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotation marks and citations omitted). A court, thus, should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant purposefully established minimum contacts within the forum. *Burger King*, 471 U.S. at 479.

An "individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original). Parties to an interstate contract who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and

---

[3] Ventex argues that the Agreement does not support litigation in this Court because § 16.6 provides that neither party will sue the other in court for damages. The Agreement, however, also provides that "nothing in this Section 16.6 will . . . prevent either party from seeking interim or permanent injunctive relief against the other in any court of competent jurisdiction." Agreement at 13-14, § 16.6 (ECF 38). Because the only remedy Columbia seeks under its breach of contract claim is injunctive relief and because under the Agreement the requisite arbitration proceedings "will take place in Portland, Oregon US," *id.*, this provision does not undermine—and, as discussed below, in fact supports—specific personal jurisdiction in this Court over Ventex.

sanctions in the other State for the consequences of their activities." *Id.* at 473 (quotation marks and citation omitted). This continuing relationship must create a "substantial connection" between the defendant and the forum state that is more than merely "random, fortuitous or attenuated." *Id.* at 479-80. A defendant whose interstate contract contemplates significant future consequences in another state has the requisite continuing relationship with the parties in that state. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991). A defendant who has created continuing obligations to a resident of the forum state has satisfied the "purposeful availment" requirement. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Because determining the existence of specific personal jurisdiction requires a case-specific analysis, weighing the facts here in light of prior cases involving breach of contract claims is instructive. In *Burger King*, the Supreme Court found personal jurisdiction in Florida over an out-of-state franchisee who contracted with a Florida corporate plaintiff. 471 U.S. at 479. First, the Court held that the contract had a "substantial connection" to Florida, where the defendant negotiated with the plaintiff "for the purpose of a long-term franchise and the manifold benefits that would derive" from the resulting contract. *Id.* The contract involved a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts," and the Court held that the "quality and nature" of this relationship could "in no sense be viewed as random, fortuitous, or attenuated." *Id.* (quotations and citations omitted). Second, the Court held that the defendant's actions caused "foreseeable injuries" to the plaintiff. *Id.* Finally, the Court weighed the significance of choice-of-law and arbitration provisions in the franchise documents. The Court held that although a choice-of-law clause providing that the contract "shall be governed and construed under and in accordance with the laws of the State of Florida" would not, standing alone, be enough to confer personal jurisdiction, the provision reinforced both the defendant's

"deliberate affiliation" with Florida and the "reasonable foreseeability of possible litigation there." *Id.* at 483. Similarly, a provision to resolve certain disputes under binding arbitration in Miami weighed in favor of finding personal jurisdiction in Florida. *Id.*

In *Sher v. Johnson*, a deed of trust signed by the plaintiff in favor of the defendants to secure legal representation was a primary factor for the Ninth Circuit in concluding that personal jurisdiction existed over the defendant. 911 F.2d at 1363. The court held that the deed weighed heavily toward a finding of personal jurisdiction, not because the deed involved California property, but because execution of the deed "contemplated [significant] future consequences" in California, including potential application of California law and action by a California court. *Id.*

In contrast, the Ninth Circuit in *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.* failed to find specific personal jurisdiction in California based on a Letter of Intent ("LOI") when nothing in the LOI's terms suggested purposeful availment of California law. 417 F. App'x 664, 666 (9th Cir. 2011). The Court noted that the LOI was signed in China and written in Chinese, did not itself establish a joint venture, and lacked a choice of law provision for California law, "instead indicat[ing] that it was prepared in accordance with both the Chinese and 'American Laws.'" *Id.*

In the pending case, the facts are closer to those presented in *Burger King* and *Sher* than in *HK China*. First, like the contract in *Burger King*, the contract between Ventex and Columbia was substantial. Ventex earned millions of dollars in revenue under the contract. Thus, the contractual relationship between Ventex and Columbia cannot be "viewed as random, fortuitous, or attenuated." *See Burger King*, 471 U.S. at 479. Second, Ventex's alleged breaching activities—including its unauthorized display of Columbia Sportswear's trademark, unauthorized disclosure of the parties' relationship, and unauthorized challenge of Columbia's patents—all caused

"foreseeable injuries" to CSNA in Oregon. Third, the choice-of-law and arbitration provisions in the Agreement, like those contained in the *Burger King* franchise documents, similarly weigh toward a finding of specific personal jurisdiction. The *Burger King* franchise agreement stated that it "shall be deemed made and entered into in the State of Florida and shall be governed and construed under and in accordance with the laws of the State of Florida." *Id.* at 483. Similarly, the Agreement at issue here states that it "will be exclusively governed in all respects and interpreted in accordance with the laws of Oregon." Agreement, § 16.6. Also, the *Burger King* agreement required in-forum arbitration of certain disputes. *Burger King*, 471 U.S. at 483. Here, the Agreement requires the parties to resolve certain disputes through arbitration proceedings that "will take place in Portland, Oregon US." Agreement, § 16.6. The Agreement's dispute resolution provisions also align the facts here with those in *Sher v. Johnson*, in which execution of a deed contemplated application of California law and action by a California court. The Agreement is governed by Oregon law and provides that injunctive relief may be granted by a court in Oregon. Further, unlike *HK China*, the Agreement was signed in Oregon, written in English, established a joint venture, and contained an exclusive choice-of-law provision selecting Oregon law.

Considering this precedent, the Court finds enough purposeful availment by Ventex to satisfy the first prong of the specific jurisdiction analysis. Further, because Ventex's Oregon contacts are directly related to the Agreement that is the subject of this lawsuit, Columbia's breach of contract claim "arises out of" Ventex's contacts with Oregon. *See Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789-90 (9th Cir. 1987); *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, 2010 WL 596584, at *4 (D. Or. Feb. 12, 2010). Accordingly, for its claim of breach of contract, Columbia has made a sufficient showing to establish specific personal jurisdiction under the first two prongs of the relevant analysis.

## C. Columbia's Claim of Patent Infringement

As previously noted, Meyer is an Oregon resident. Columbia contends that Meyer's efforts, as Ventex's agent, to induce Seirus's infringement of Columbia's D'093 Design Patent subject Ventex to personal jurisdiction in Oregon for Columbia's claims of patent infringement. Ventex responds that Meyer's limited activities in Oregon are insufficient. For the reasons stated below, Columbia has the better argument.

Columbia alleges that Meyer, in his capacity as Ventex's sole sales representative in the United States, actively facilitated and participated in communications between Ventex and Seirus that furthered the development, use, and sale of the allegedly infringing Heatwave fabric. In response, Ventex states that Meyer did not personally import or sell the allegedly infringing fabric, that Ventex shipped the allegedly infringing fabric to China, and that Ventex's relationship with Meyer did not generate the infringing design. In evaluating Ventex's motion to dismiss, the Court must resolve all factual conflicts in favor of Columbia. *Elecs. For Imaging*, 340 F.3d at 1349. Further, Ventex does not dispute all of Columbia's allegations related to Ventex and Meyer's coordinated, infringing conduct, and the Court "must accept uncontroverted allegations in the plaintiff's complaint as true." *Id.*

A plaintiff may establish jurisdiction under an agency theory by a showing that the defendant has exercised control over the activities of a third party. *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) (holding that a corporation "can purposefully avail itself of a forum by directing its agents or distributors to take action there"); *Celgard*, 792 F.3d 1379 (holding that the contacts of a third party "may be imputed to the defendant under either an agency or alter ego theory"). Far from being "random, fortuitous, or attenuated," *Burger King*, 471 U.S. at 480, the totality of Meyer's alleged activities performed as Ventex's sales representative are sufficient to support Columbia's prima facie case that Ventex, by "engag[ing] in significant activities" in

Oregon, *id.* at 475-76, purposefully directed its activities at Oregon. In addition, because Meyer acted in his capacity as Ventex's sales representative and because Columbia's claims of patent infringement arise out of Meyer's activities, Columbia has satisfied the second prong of the analysis. Accordingly, for its claims of patent infringement, Columbia has made a sufficient showing to establish specific jurisdiction under the first two prongs of the relevant analysis.

**D. Whether It Is Reasonable and Fair to Assert Jurisdiction Over Ventex**

After a court finds that a defendant's activities within a forum state are sufficient to establish minimum contacts, the court must determine whether the assertion of personal jurisdiction over that defendant is reasonable. *Burger King*, 471 U.S. at 476. For this determination, the standards under Ninth and Federal Circuit law are identical. Further, after a plaintiff has satisfied the first two prongs of the jurisdictional analysis, a strong presumption of jurisdiction exists and the defendant "must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard*, 65 F.3d at 1500 (quoting *Burger King*, 471 U.S. at 477) (emphasis added in *Ballard*); *accord Celgard*, 792 F.3d at 1377-78 (Federal Circuit applying the same standard). The Ninth Circuit has identified seven specific factors that a court should consider in making this reasonableness determination:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters*, 223 F.3d at 1088 (citation omitted); *cf. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (limiting the Federal Circuit's analysis to five of the seven factors). These factors may "establish the reasonableness of

jurisdiction upon a lesser showing of minimum contacts than otherwise would be required," but they may also "render jurisdiction unreasonable," even in the presence of minimum contacts. *Burger King*, 471 U.S. at 477. "None of the factors is dispositive in itself; instead, [a court] must balance all seven." *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1488 (9th Cir. 1993).

1. **Purposeful interjection by Ventex into the forum**

This factor "parallels the question of minimum contacts." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993). Ventex has taken numerous steps to interject itself into Oregon. According to Columbia, Ventex's contract with Columbia not only resulted in substantial revenue, but Ventex also contracts with additional Oregon companies, including adidas. Ventex employed an Oregon-based U.S. sales representative (Meyer) and transacted business through that agent in and from Oregon. In addition, the Agreement provides that it will be governed by Oregon law and that the parties must arbitrate certain disputes in Portland, Oregon.

2. **Burden on Ventex**

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987). Ventex argues that as a Korea-based company, the burden imposed by having to litigate in Oregon would be extreme. Ventex, however, consents to personal jurisdiction in California and fails to explains how the burden imposed by having to litigate in Oregon would be materially greater than the burden of having to litigate in California.

3. **Extent of conflict with the sovereignty of Ventex's state**

Ventex has identified no conflict with the sovereignty of South Korea. Further, nothing in the record suggests that litigation in Oregon, especially as opposed to litigation in California, would create any such conflict with the sovereignty of South Korea.

### 4. Forum state's interest in adjudicating the dispute

A forum state has a strong interest "in protecting its citizens from the wrongful acts of nonresident defendants." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995). Both CSNA and CSC are corporations organized and existing under the laws of the State of Oregon, and both have their principal places of business in Oregon. In addition, the Agreement is governed by Oregon law. Oregon has an interest in protecting Oregon companies by ensuring that companies choosing to conduct business in Oregon and with Oregon companies comply with the law and fulfill their contractual obligations.

### 5. Efficient judicial resolution of the controversy

In evaluating the efficiency of the forum, a court "look[s] primarily at where the witnesses and the evidence are likely to be located." *Core–Vent*, 11 F.3d at 1489. Ventex argues only that Oregon cannot be the "most efficient" forum because California also is available as an alternative and that arbitration is available should Columbia choose to arbitrate. Ventex, however, does not explain how California would be a *more* efficient forum in terms of the location of witnesses and evidence, especially considering both Columbia and Meyer's presence in Oregon. Moreover, under the Agreement, any arbitration proceedings must take place in Portland, Oregon.

### 6. Importance of the forum to Columbia's interest in convenient and effective relief

Although importance of the forum to Plaintiff's interest remains a factor in the reasonableness analysis, recent cases have cast doubt on this factor's significance. *See, e.g.*, *Core–Vent*, 11 F.3d at 1490 (holding that "[a] mere preference on the part of the plaintiff for its home forum does not affect the balancing"); *Roth*, 942 F.2d at 624 ("[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."). Thus, although Columbia has correctly noted that Ventex cannot reasonably dispute that Oregon is

the most convenient and effective forum for Columbia, this factor does not significantly affect the Court's analysis.

### 7. Existence of an alternative forum

The plaintiff "bears the burden of proving the unavailability of an alternative forum." *FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1445 (9th Cir. 1987); *accord Roth*, 942 F.2d at 625 ("[Plaintiff] has not shown that he could not litigate in [an alternative forum]. Doubtless he would prefer not to, but that is not the test."). Columbia has presented no argument for why it could not litigate in an alternative forum, including California. "The mere existence of an alternative forum," however, cannot satisfy a defendant's burden "to present a compelling case that jurisdiction is unreasonable." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

### 8. Summary

The Court has considered all relevant factors. Ventex has not made the required "compelling case" that exercise of jurisdiction in Oregon would be unreasonable. *See Burger King*, 471 U.S. at 477; *Celgard*, 792 F.3d at 1377-78; *Ballard*, 65 F.3d at 1500.

## E. Columbia's Claims of Unfair Competition

Columbia asserts both federal and state claims of unfair competition, alleging that on its website Ventex falsely designated Columbia as one of Ventex's customers, thereby unlawfully capitalizing on Columbia's established brand recognition. These claims do not appear to arise out of Ventex's contacts in Oregon. Thus, whether this Court may assert specific personal jurisdiction over Ventex for these claims depends on the doctrine of pendent personal jurisdiction.

The Ninth Circuit has adopted the doctrine of pendent personal jurisdiction. *Action Embroidery*, 368 F.3d at 1181. This doctrine allows a court to "assert personal jurisdiction over a defendant with respect to a claim for which there is no independent basis for personal jurisdiction," provided that the claim "arises out of a common nucleus of operative facts with a claim in the

same suit over which the court does have personal jurisdiction." *Id.*[4] In determining the existence of a common nucleus of operative facts, a court may consider the relevant facts' "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2333 (2016) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1982)).[5] Under this doctrine, the exercise of personal jurisdiction lies within the discretion of the district court and depends on "considerations of judicial economy, convenience and fairness to litigants." *Action Embroidery*, 368 F.3d at 1181 (quoting *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)).

Columbia's claim of unfair competition arises from Ventex's alleged use of "the words, terms, names, and symbol" of Columbia falsely to designate Columbia as one of Ventex's customers. Columbia alleges that Ventex's use of Columbia Sportswear's trademark also violates the Agreement, under which Ventex must "only use the Trademarks on or in connection with the Materials and only in a manner expressly set forth in writing by Columbia." Agreement, § 4.1 (ECF 38). First, because of the convergence of facts relevant to Columbia's claims of breach of contract and unfair competition, the Court's combined exercise of personal jurisdiction over Ventex on these claims will serve the interest of judicial economy. Second, as explained above, Ventex's arguments that jurisdiction in Oregon would be inconvenient as compared to the exercise of jurisdiction in California are unpersuasive. Third, the Court finds that it is not unfair to Ventex for the Court to resolve Columbia's unfair competition claims in the same lawsuit in which the

---

[4] The Federal Circuit has held that regional circuit law governs procedural determinations that are not unique to patent cases. *See Ali v. Carnegie Inst. of Wash.*, 684 F. App'x 985, 991 (Fed. Cir. 2017) (collecting cases).

[5] The RESTATEMENT (SECOND) OF JUDGMENTS defines "transaction" as "a natural grouping or common nucleus of operative fact." Whether those facts constitute a single transaction depends on the enumerated factors. *See Whole Woman's Health*, 136 S. Ct. at 2333.

Court will resolve Columbia's claims of breach of contract and patent infringement. Thus, because Columbia's breach of contract claim shares a common nucleus of operative facts with its unfair competition claims and because exercise of personal jurisdiction over Ventex for Columbia's unfair competition claims serves the applicable policy considerations, the Court exercises pendant personal jurisdiction over Ventex for Columbia's unfair competition claims.

## CONCLUSION

Defendant Ventex Co. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction (ECF 27) is DENIED.

**IT IS SO ORDERED**.

DATED this 30th day of September, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge