**Paul Bierly, OSB #950548**
PaulBierly@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

**Seth M. Sproul (*admitted pro hac vice*)**
sproul@fr.com
**FISH & RICHARDSON**
12860 El Camino Real, Suite 400
San Diego, CA  92130
Telephone: (858) 678-5070

*Attorneys for Movant/Intervenor Seirus
Innovative Accessories, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR NORTH AMERICA INC.**, an Oregon corporation; and **COLUMBIA SPORTSWEAR COMPANY**, an Oregon company, | Case No. 3:17-cv-00623-MO **REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO SET ASIDE DEFAULT JUDGMENT** |

Plaintiffs,

v.

**VENTEX CO. LTD.**, a foreign company; and
**DAN MEYER**, an individual,

Defendants.

_____

**SEIRUS INNOVATIVE ACCESSORIES, INC.**,

_____

Movant.

**Page 1 –   REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO SET
ASIDE DEFAULT JUDGMENT**

Seirus brought this motion after Columbia filed a surprise garnishment action seeking to disrupt its business with its supplier Ventex. Recognizing that this Court was frustrated with Ventex's non-participation, Seirus respectfully submits that the judgment and remedy given to Columbia cannot be sustained under the *Frow* doctrine or binding Federal Circuit precedent as to damages awards. Contrary to Columbia's opposition, Seirus had no opportunity to challenge the default proceedings, and no reason to involve itself in the proceedings until Columbia filed a garnishment action against Ventex and sought money from Seirus. Seirus' intervention is timely and its request to stay execution of the judgment is appropriate.

## I. Seirus has met all the factors for intervention under Fed. R. Civ. P. 24(a)(2).

The parties agree that these are the controlling factors for intervention under Rule 24(a)(2): an intervenor must show (1) the application for intervention is timely, (2) the applicant has a "significantly protectable" interest relating to the subject matter, (3) the disposition of the action might, as a practical matter, impair the applicant's ability to protect that interest, and (4) the applicant's interest might be inadequately represented by the existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

It bears repeating that these factors are evaluated liberally in favor of intervention: "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, [the court] often prevent[s] or simplifies future litigation involving related interests; at the same time, [the court] allow[s] an additional interested party to express its views." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

Seirus meets all of these factors.

A.      **Seirus' motion is timely.**

Columbia suggests that Seirus should have sought to intervene at the time Columbia first

sought default against Ventex in this action.  Columbia, however, omits a number of critical

facts, and its argument lacks legal support.

As stated in Seirus' motion, Columbia served the writ of garnishment only a few weeks

before Seirus brought this motion.  (Seirus' Mot., at 9 (Dkt. 97).)  Prior to that time, Seirus was

unaware that Columbia would attempt to use this default judgment against Ventex to seek

garnishment from Seirus.  Thus, contrary to Columbia's assertions, Seirus acted diligently to

protect its interests.

Columbia claims that Seirus "knew" Columbia was filing a motion for default against

Ventex last September based on one filing in the separate *Columbia v. Ventex* case, which is

pending in the Southern District of California ("RICO case").[1]  However, as this Court is aware,

---

[1] Columbia has generated a trilogy of cases in federal district courts:

- The Patent case, which Columbia originally filed in Oregon as *Columbia v. Seirus*, USDC Oregon Case No. 3:15-cv-00064.  That case has always been before Judge Hernandez, and it was transferred to the Southern District of California in 2017 as *Columbia v. Seirus*, USDC Southern District of California, 3:17-cv-01781.  It has been tried twice and appealed to the Federal Circuit twice.  The Federal Circuit's most recent decision overturned the jury's verdict of no infringement by Seirus of the HeatWave fabric of Columbia's D'093 design patent—the same patent at issue here.  The appellate court remanded the case for a new trial, which is currently scheduled for December 2024.  Notably, there has been no determination of liability on the D'093 patent.  That remains to be litigated in the third trial.

- This case, which Columbia filed against Ventex, and not Seirus, alleging that Ventex induced Seirus to infringe the Columbia patents that are at issue in the Patent case.  The only remaining patent in this case is the same Columbia design patent at issue in the Patent case.

- The RICO case, which is the basis for Columbia's incorrect argument that Seirus' motion to intervene here is untimely.  USDC-SD Cal. Case No. 3:20-cv-00709-RSH.

**Page 3 –    REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO SET ASIDE DEFAULT JUDGMENT**

the RICO case was originally brought in this Court, and on April 14, 2020 this Court granted the

Seirus defendants' motion to dismiss for lack of personal jurisdiction, dismissed the Seirus

defendants from the case, and transferred the remainder (against the Ventex defendants) to the

Southern District of California. (*Columbia v Ventex*, USDC Oregon Case No. 3:19-cv-00137,

4/14/2020 Order Dismissing Seirus and Transferring Case, Dkt. 300.)

  After Seirus' dismissal and the transfer to the Southern District, Columbia did not attempt

to add Seirus back into the RICO case, and instead sought default judgment against Ventex.  The

court declined Columbia's request to enter default judgment against Ventex, since such a default

would impact Seirus.  Columbia and Seirus settled what remained of their dispute in the RICO

case on March 31, 2023.  (*See* 4/6/2023 Columbia's Unopposed Mot. to Dismiss the Seirus Defs.

with Predj., RICO Case (Dkt. 367).)  As a result of that settlement, on April 7, 2023 the Southern

District of California granted Columbia's unopposed motion to dismiss all claims against Seirus

with prejudice.  (4/7/2023 Order granting Mot. to Dismiss, RICO Case (Dkt. 368).)  Pursuant to

the terms of the settlement agreement, Seirus was contractually prohibited from taking any

further action in the RICO case unless ordered to do so by that court or served with a subpoena

by Ventex.  (4/6/2023 Columbia's Unopposed Mot. to Dismiss the Seirus Defs. with Predj.,

RICO Case, at 1 n.1 (Dkt. 367) (quoting settlement agreement).)

  On September 7, 2023—six months after settling with Seirus and precluding any further

participation by Seirus in the matter—Columbia filed a motion in the RICO case for relief from a

Protective Order.  (9/7/2023 Mot. for Leave from Prot. Order, RICO case, at 1-2 (Dkt. 377-1).)  In

that motion, Columbia asked the court to let Columbia use certain documents that were subject to

a protective order in the RICO case to support a motion to default Ventex in this case.  (*Id.*)  That

motion mentioned the September 5, 2023 status conference in which this Court suggested that

Columbia file a motion for default judgment against Ventex. (*Id.* at 2.) From this note, buried

deep in its brief, Columbia asks this Court to infer that Seirus "knew" Columbia would move to

default Ventex, and thus that Seirus' motion to vacate that default judgment is untimely.

In short, Columbia argues that a single filing in the RICO case should be the measure of

timeliness for this motion. This makes no sense under these circumstances. First, Seirus was not

a party to the RICO case and was not actively monitoring that case, as it had settled this dispute

with Columbia and all claims against Seirus in that case had been dismissed with prejudice. As

of the date of this brief, Seirus has been dismissed from the RICO case for almost four years and

dismissed with prejudice for almost exactly a year. Further, as Columbia well knows, the

settlement agreement in the RICO case prohibits Seirus from participating in the RICO case in

any way after the date of the settlement agreement. (4/6/2023 Columbia's Unopposed Mot. to

Dismiss the Seirus Defs. with Predj., RICO Case, at 1 n.1 (Dkt. 367) (quoting settlement

agreement: "None of the Seirus Defendants will take any further action in the RICO Action

unless either ordered to do so by the Court or served with a subpoena by the Ventex

Defendants.").) And of course, Seirus was not present at the status conference in this Court on

September 5, 2023, because Seirus has never been a party to this case.

As to the instant case, Seirus had no reason to monitor or participate in the default

proceedings, as Ventex had no separate liability and at that time liability was resolved in Seirus'

favor. On September 7, 2023, when Columbia filed its motion seeking relief from the protective

order in the RICO case, Seirus had a jury verdict and judgment of no infringement of the

Columbia D'093 design patent, and the Federal Circuit had not yet issued its opinion overturning

that verdict. That verdict was not overturned until the Federal Circuit issued its opinion on

September 15, 2023. And even then, Seirus filed a petition for *en banc* rehearing, which was not

denied until December 22, 2023. Seirus thus had no reason to believe that Ventex's liability, if

any, in the Oregon case would have any effect on Seirus. The Ventex case seemed to be a dead

letter. Seirus, a non-party, did not foresee that Columbia would seek and receive a default

judgment of $1.6M and then seek garnishment from Seirus.

Seirus moved to intervene immediately after Columbia sought garnishment, and within

only a few weeks of this Court's default order. Seirus' motion is timely.

**B.      Seirus meets the other factors for intervention under Fed. R. Civ. P. 24(A)(2).**

The other elements of 24(a)(2) also support intervention. Seirus has a "significantly

protectable" interest relating to this case—Columbia is attempting to seize Seirus' money, and its

money payable to its supplier Ventex, as a result of the default judgment against Ventex. On this

issue, Columbia quotes its own Writ of Garnishment, referring to the moneys Seirus owes to

Ventex as "Ventex property." That money is properly characterized as Seirus' money that it may

owe to Ventex. In return for Seirus' payment of money to Ventex, Seirus will receive fabric. If

Seirus does not pay Ventex any money because it is seized by Columbia, Seirus will not receive

fabric. This will effectively destroy the business relationship between Seirus and Ventex, and

cause Seirus irreparable harm. Seirus has an exclusive manufacturing agreement with Ventex for

the Heatwave fabric at issue, and it does not source that fabric from anywhere else. (Seirus Mot.

to Interv., at 13, *citing* Ex. B to Mot. (Sept. 25, 2017 Trial Tr. of direct examination of Bob

Murphy), at 1519.)

The Writ of Garnishment, as is typical, states that papers filed with the Utah court show

that Seirus "may possess or control some of Defendants' property, which may include debts and

earnings not yet paid." (Sproul Decl., Ex. A at 2 (Dkt. 93-1).) Attached to the Writ are a series

of interrogatories that are designed to determine whether Seirus is actually in possession of any

of Ventex's property. (*Id.*, at 6.) Columbia's argument that Seirus does not have a significantly

protectable property interest assumes that Seirus does in fact have Ventex's property in its possession. This has not been established yet by any forum. And as explained above, seizing Seirus' money that it may or may not owe to Ventex in exchange for fabric would effectively destroy the business relationship between the two companies.

Thus, Seirus not only has a significantly protectable interest in the money in Seirus' accounts, executing on the default judgment would "impair" Seirus' ability to protect its interest in that property. And lastly, Ventex—having defaulted and without counsel—cannot protect Seirus' interests in this case. Consequently, all four of the factors under Fed. R. Civ. P. 24(a)(2) are met here. *Arakaki*, 324 F.3d at 1083.

Moreover, Columbia is wrong when it claims that the Court in the RICO case did not allow Seirus to intervene. (Columbia Opp'n, at 8.) Columbia goes so far as to say that "the Court [in the RICO Case] did not allows [*sic*, allow] Seirus to intervene, and it is disingenuous for Seirus to suggest that it did." (*Id.*) But that is exactly what happened. When Columbia tried to default Ventex in the RICO case, Seirus had already been dismissed from that case. Seirus then filed a pleading entitled "Non-Party Seirus' Reply to Columbia's Request for Clerk's Entry of Default as to Defendant Ventex Co. Ltd." (3/16/21 Non-Party Resp., RICO Case (Dkt. 336).) The Court in the RICO case specifically treated that motion as a motion to intervene under Fed. R. Civ. P. 24, and it granted the motion. (5/12/2021 Op. & Order, RICO Case, at 4-5 (Dkt. 345) (relying on Rule 21(a)(2) and related authority, "the Court has discretion to construe the Non-Parties' *Ex Parte* Application as a motion to intervene for the limited purpose of opposing Plaintiff's Motion for Default Judgment . . . . In light of the foregoing, the Court **GRANTS** the Non-Parties' *Ex Parte* Application.").) Far from being disingenuous, Seirus is simply recounting the record from the RICO case, properly noting that the court in the RICO case granted Seirus

the same intervention relief that Seirus seeks here. To the extent Columbia disagrees, presumably to justify its lack of transparency with this Court, it is wrong.

Thus, all the elements for intervention under Fed. R. Civ. P. 24(a)(2) are met here.

**II.     Seirus has standing to vacate the default judgment.**

Seirus' motion to set aside the default judgment against Ventex presents a unique fact pattern, one Columbia's cases do not address. It is common for a creditor to obtain a judgment against a debtor, and then file a garnishment against a third party who holds money belonging to the debtor. In that scenario, it is also not uncommon for the garnishee to fail to respond to the writ of garnishment, and for the creditor to then obtain a default judgment against the garnishee, which the garnishee tries to set aside. *See, e.g. Laborers Pension Tr. Fund Detroit & Vicinity v. H & H Constructors, Inc.*, No. 05-CV-71995, 2007 WL 1880720, at *1 (E.D. Mich. June 29, 2007) (granting third-party garnishee's motion to set aside default judgment against it because, among other things, it was not properly served with the garnishment writ); *In re ConectL Corp.*, 10-00607-BEM, 2013 WL 4787643, at *1 (Bankr. N.D. Ga. Sept. 4, 2013) (granting third-party garnishee's motion to set aside default judgment against it because the writ of garnishment was defective).

But the situation here presents a different twist: the purported creditor (Columbia), obtained a defective default judgment against its purported debtor (Ventex), and then the creditor served a writ of garnishment against a third-party garnishee (Seirus); the third-party garnishee then seeks to protect itself from the defective default judgment against the purported debtor (Ventex) by moving to set aside that defective default judgment. This fact pattern is rather unusual, and Columbia has not presented any case law that is factually on point.

At least a few courts have addressed this same scenario, and they have held that a third-party creditor does have standing to set aside a defective default judgment against a judgment

debtor.  For example, in *Dubrey v. Izaguirre*, 685 A.2d 1391 (Pa. Super. 1996), the plaintiff sued

a cab company for injuries sustained in a car accident.  The court entered a default judgment

against the cab company.  The plaintiff began garnishment proceedings against the cab

company's insurer.  The insurer began a proceeding to strike the judgment against the cab

company because that court lacked personal jurisdiction over the cab company.  The court held

that the garnishee insurer had standing to challenge the default judgment against the cab

company because personal jurisdiction is indispensable, and if it were lacking, the default

judgment would be void.  685 A.2d. at 509.

Other authorities are in accord.  *See also* 38 C.J.S. Garnishment § 266 ("the garnishee is

ordinarily entitled to assert any defenses or objections to the proceedings against the principal

defendant which are of a jurisdictional character or which would render the judgment void");

*Jackson v. Welch*, 545 P.2d 1254, 1257 (Okla. 1976) "(a valid judgment is a prerequisite to a

garnishment proceeding and [] a garnishee may properly show jurisdictional defects in the

judgment sued upon.  No estoppel bars State Farm from raising the defective service as a defense

to the Jacksons' garnishment action"); *Fibreboard Paper Prods. Corp. v. Dietrich*,  475 P.2d

1005, 1006 (Utah 1970) (granting motion to set aside default judgment against judgment debtor

for lack of jurisdiction, "the garnishee had the right to attack the default judgment entered against

the defendant").  Thus, a garnishee has standing to challenge a default judgment against the

judgment debtor where that default judgment is void, or otherwise precluded by law.

Here, proper application of the *Frow* doctrine precludes default judgment against Ventex

in order to avoid conflicting decisions.  (Seirus' Mot. to Interv., at 10-12); *Frow v. De La Vega*,

82 U.S. 552 (1872).  Again, Columbia's failure to apprise this court of the *Frow* doctrine—of

which Columbia was aware—can obviously lead to conflicting results.  The courts in the Patent

case have *not* concluded that Seirus' Heatwave fabric infringes on Columbia's patents, and a final judgment of noninfringement is entirely possible. This Court's default judgment against Ventex directly conflicts with that likely outcome. The teaching of *Frow* in this circumstance is to simply vacate the potentially conflicting default judgment against Ventex and wait to see how the underlying patent litigation is resolved. And as explained in section III, Columbia's interpretation of the *Frow* doctrine is hopelessly narrow and incompatible with the intent of the *Frow* court.

Finally, the three cases Columbia cites on this issue are easily distinguishable. First, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 562 F. Supp. 3d 867, 879 (C.D. Cal. 2021), involved a claim against a terrorist organization under the Anti-Terrorist Act. The plaintiff obtained a judgment against the terrorist organization. The plaintiff later issued a writ of garnishment against Alvarez, an individual associated with the terrorist organization. Alvarez was not a defendant in the underlying action against his organization. Alvarez claimed that the underlying judgment against the terrorist organization was void because the court that issued the judgment did not have personal jurisdiction over the terrorist organization. *Cabalerro* does not involve a third-party garnishee's effort to set aside a default judgment against a judgment debtor, and its conclusion is based entirely on federal case law regarding which parties may challenge personal jurisdiction. The decision in *Cabalerro* is of no help here.

Second, *Marron v. Moros*, 21-23190-CIV, 2023 WL 6356969, at *5 (S.D. Fla. Sept. 29, 2023), which cites *Caballero*, is another case under the Anti-Terrorist Act. It holds that in Anti-Terrorist Act cases, "agencies or instrumentalities" of a party lack standing to raise defenses that the named defendants could have raised themselves. It appears to be limited to cases brought under the Anti-Terrorist Act.

Third, *Wieninger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006), a long and complicated decision, is cited by *Marron*. *Weininger* is factually distinguishable because it did not involve a garnishee trying to set aside a default judgment against a judgment debtor. Two third-parties parties were interested in the underlying default judgment—one of them was merely an amicus party, which the court said was "not affected by the [default] judgment." 462 F. Supp. 2d at 469. The other was a garnishee "who was seeking not to void the judgment but merely to obtain interpleader relief." *Id.* Moreover, two prior courts had said that the state court that issued the underlying default judgment had jurisdiction to do so. *Id.* Thus, under these circumstances, the court held that it would be "manifestly inequitable for this Court to reopen the judgments so as to permit a challenge to the underlying adjudication at the request of parties not affected by the judgments." *Id.* Columbia mischaracterizes this last quote as a broad holding that third-party garnishees never have standing to challenge default judgments, but the court's holding was confined to the narrow facts before it. Thus, none of the cases upon which Columbia relies has any bearing on the issues here. Seirus has standing to ask this Court to vacate the default judgment against Ventex.

**III.     The *Frow* doctrine applies here to prevent the risk of inconsistent judgments.**

The *Frow* doctrine prohibits courts from entering "incongruous and unfair" default judgments. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). "*Frow* is not limited to claims asserting joint liability, but extend[s] to certain circumstances in which the defendants have closely related defenses or are otherwise similarly situated." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1006 (N.D. Cal. 2001).

In the Patent case and this matter, the same plaintiff, Columbia, is asserting the same legal theory—infringement of the D'093 patent—against similarly situated defendants, Ventex and Seirus. In the Patent case, Columbia asserts that Seirus' Heatwave fabric infringed the

**Page 11 – REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO SET ASIDE DEFAULT JUDGMENT**

D'093 patent. In this matter, Columbia asserts that Ventex "actively induced" Seirus to infringe the D'093 patent by selling the same Heatwave fabric to Seirus. (First Am. Compl. ¶ 85 (Dkt. 26), *see also*, ¶¶ 58, 65, 87.) According to Columbia, Ventex and Seirus "are in privity with each other" (*id.* at 2) and Ventex "conspire[ed] with . . . Seirus." (*Id.* ¶ 74.) Columbia also alleges in its First Amended Complaint that Columbia obtained a judgment against Seirus for infringing the D'093 Patent in the amount of $3,019,174. (*Id.* ¶¶ 39-52.)

Columbia obtained a default judgment in this matter on November 8, 2023. (Dkt. 84.) Yet, at that time, the Federal Circuit had overturned Columbia's judgment against Seirus for infringing the D'093 patent and, therefore, the allegations in the First Amended Complaint were demonstrably false. Allowing Columbia to maintain its default judgment would be "incongruous and unfair" because the default judgment makes Ventex liable for conduct—allegedly inducing Seirus to infringe the D'093 patent—that Columbia has failed to prove in the Patent case against Seirus. The *Frow* doctrine does not allow for a default judgment against one defendant that "directly contradict[s]," *In re First T.D. & Inv., Inc.*, 253 F.3d at 532, a ruling regarding another defendant.

Columbia nonetheless contends—wrongly—that the *Frow* doctrine does not apply. According to Columbia, *Frow* only "applies where *a single case* is brought against several defendants[.]" (Columbia's Opp'n at 8 (emphasis in original).) Columbia cites no authority for this contention, and it is wrong. In fact, courts have applied *Frow* to prohibit inconsistent results in separate cases. In *United States v. One Pen & Ink Drawing by Van Gogh*, for example, the plaintiff argued that a default judgment was appropriate because its case was "sufficiently isolated from the other related cases that entry of default judgment would have no adverse effect on the other cases or the claimants." No. CV165366DSFPLAX, 2017 WL 8229597, at *1 (C.D.

Cal. Sept. 27, 2017). The district court disagreed. It explained that "a court should not enter default judgment against a party where the default judgment could impact a non-defaulting party's liability or where the parties are similarly situated or have closely related defenses." *Id.* (citing *Frow*, 82 U.S. at 554.) The court then explained that the matter before it was "closely intertwined" with several related cases, and therefore it would be "inappropriate to enter default judgment in only one case at this time." *Id.*

The district court in *Rivera v. Limassol Grocery, Corp.* also ruled that *Frow* applied even though the defendants were "not defendants in the same case." No. 16-CV-6301-KAM-SJB, 2019 WL 1320339, *5 (E.D.N.Y. Jan. 4, 2019). The court identified a number of similarities between the two cases, including that the plaintiff and plaintiff's counsel were the same, the pleadings were intertwined, and the same allegations were at issue. *Id.* In light of those similarities, the court reasoned that it was "as if all the defendants were together in a single case." *Id.* *6. Consequently, "the same rationale of *Frow*—the need to avoid inconsistent judgments—counsels against resolving the default judgment motion." *Id.* at *5.

For these reasons, it makes no difference that the defendants here—Ventex and Seirus— are defendants in different cases. Columbia and its counsel are the same, and Columbia's pleadings are intertwined. Both cases are premised on allegations that Seirus' Heatwave fabric infringed the D'093 patent. It is "as if all the defendants were together in a single case." *Id.* It would be "incongruous and unfair" for Columbia to maintain its default judgment against Ventex for inducing Seirus to infringe the D'093 patent if the court in the Patent concludes that Seirus did not infringe the patent. This is especially true on the facts here, where Columbia, the plaintiff in both cases, chose to sue Seirus and Ventex separately.

Columbia also contends, again incorrectly, that *Frow* does not apply because "it is not *necessary* that the infringement determinations be consistent."  (Columbia's Opp'n at 9 (emphasis added).)  According to Columbia, the infringement determinations do not need to be consistent because it brought separate actions and seeks damages from Ventex and Seirus "based on their own individual profits."  (*Id*., at 9-10 (emphasis in original).)  But, as explained, it makes no difference that Columbia sued Seirus and Ventex in different cases.  And it is also irrelevant that Columbia seeks damages from both Seirus and Ventex because Columbia seeks damages allegedly resulting from the *same conduct*, based on the *same legal theory*.  Both cases are premised on the same incorrect theory of liability that Seirus infringed the D'093 patent: Columbia contends that Ventex induced Seirus to infringe by selling the Heatwave fabric to Seirus, and that Seirus infringed by selling that very same Heatwave fabric.  "*Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of others." *Rivera*, 2019 WL 1320339, at *3 (quoting *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976)).

Finally, Columbia asserts that it can maintain the default judgment against Ventex because it "has abandoned any request for joint and several liability."  (Columbia's Opp'n at 2.) Again, Columbia is wrong.  "*Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform."  *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1008.  In fact, the Ninth Circuit applied and extended the holding in *Frow* in *First T.D.* case, cited above.  There, the Ninth Circuit held that entry of inconsistent judgments, in which a default judgment conflicts with a judgment on the merits, is an abuse of discretion.  253 F.3d at 532; *see also Garamendi v. Henin*, 683 F.3d 1069, 1083 (9th Cir. 2012)

**Page 14 – REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO SET ASIDE DEFAULT JUDGMENT**

(same).  The *First T.D.* court observed: "The court held in *Frow* that, where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *Id.*  The Ninth Circuit extended *Frow* to cases where defendants are not jointly liable but are "similarly situated."  *Id.*; *see also Garamendi*, 683 F.3d at 1082-83 (citing *First T.D.* for extension of the general rule to "similarly situated" co-defendants, where "the case against each rests on the same legal theory" (citations omitted).)  The Ninth Circuit has also made clear that the "proper procedure" in this posture is to "wait[] until completion of trial against the non-defaulting defendants before fixing damages and entering default judgments against [defaulting defendants]."  *Garamendi*, 683 F.3d at 1083.

Moreover, Columbia cannot simply "abandon" joint and several liability.  "Under federal patent law, when infringement results from the participation and combined or successive action of several parties, those parties are joint infringers, and are jointly liable."  *FMC Corp. v. Up-Right, Inc.*, 816 F. Supp. 1455, 1461 (N.D. Cal. 1993), *aff'd*, 21 F.3d 1073 (Fed. Cir. 1994).  Columbia alleges that Ventex and Seirus participated in combined and successive conduct that infringed the D'093 patent.  Thus, there is a risk that Columbia could contend or a court could find that Columbia's default judgment against Ventex makes Seirus jointly and severally liable.  Under such circumstances, this Court should not allow Columbia to maintain a default judgment.  *See One Pen & Ink Drawing by Van Gogh*, 2017 WL 8229597, at *1 ("a court should not enter default judgment against a party where the default judgment could impact a non-defaulting party's liability").

## IV.    As explained in Seirus' motion, Rule 60 justifies relief from judgment.

The above discussion shows that each of Seirus' arguments regarding the application of Rule 60 are valid.  As explained in section I, Columbia's request for a default against Ventex in

this case is not a reasonable measure of timeliness.  Columbia's version of events ignores Seirus'

dismissal from the RICO case and the terms of the settlement agreement that prohibited Seirus

from taking part in that case.  And Columbia does not contend that it ever appraised this Court of

the *Frow* doctrine, when it plainly should have.  As described in Seirus' motion, Seirus is

entitled to relief under both Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable

neglect"), as well as under Rule 60(b)(2) (newly discovered evidence).  (Seirus' Mot. to Interv.,

at 14-15.)

**V.    The judgment should be set aside because Columbia is not entitled to any damages from Ventex.**

Nothing in Columbia's opposition changes the fact that Ventex has no infringing sales.

(Seirus' Mot. to Interv., at 13-14.)  Seirus explained in its Motion that Ventex's sales are all

entirely in Korea, not the United States, which precludes any independent infringement claim

against Ventex.  (*Id*.)  "It is axiomatic that U.S. patent law does not operate extraterritorially to

prohibit infringement abroad."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*.,

711 F.3d 1348, 1371 (Fed. Cir. 2013), *abrogated on other grounds by Brumfield, Tr. for Ascent

Tr. v. IBG LLC*, 97 F.4th 854, 871 (Fed. Cir. 2024) (cleaned up).

Columbia's opposition relies only on allegations in its complaint regarding where sales

have taken place, but the infringement case has been tried since then.  Seirus cited trial

testimony—elicited and relied upon by Columbia—that established those sales took place only in

Korea.  Columbia has nothing in response.

**CONCLUSION**

Seirus' motion to intervene is timely, and it satisfies the other factors in Fed. R. Civ. P.

24(a)(2).  Seirus also has standing to challenge the default judgment against Ventex.  And proper

application of the *Frow* doctrine will prevent the entry of conflicting judgments in these cases.

For all of the above reasons, the Court should grant Seirus' motion to intervene and to set aside the default judgment against Ventex.

DATED:  May 2, 2024.                           MARKOWITZ HERBOLD PC

                                               *s/Paul Bierly*
                                               _____
                                               Paul Bierly, OSB #950548
                                               PaulBierly@MarkowitzHerbold.com
                                               Harry B. Wilson, OSB #077214
                                               HarryWilson@MarkowitzHerbold.com

                                               FISH & RICHARDSON

                                               *s/Seth M. Sproul*
                                               _____
                                               Seth M. Sproul (*admitted pro hac vice*)
                                               sproul@fr.com

                                               *Attorneys for Movant/Intervenor Seirus Innovative
                                               Accessories, Inc.*

2139787.5